UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CLARENCE BUTTREY,                       Case No. 1:11-cv-357

      Plaintiff,                              Barrett, J.
                                           Bowman, M.J.
  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Clarence Buttrey filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error for this Court's review. For the reasons explained below, I conclude that this case should be REMANDED because the ALJ's decision fails to clearly explain the reasons for the conclusions reached and therefore the Court cannot engage in meaningful review of the ALJ's decision.

**I. Summary of Administrative Record**

On May 9, 2008, Plaintiff filed an application for Supplemental Security Income ("SSI") alleging that he became unable to work on February 5, 2005 due to both mental and physical impairments. (Tr. 150-156). Plaintiff's claims were denied initially and on reconsideration. (Tr. 14). Thereafter, Plaintiff timely requested a hearing *de novo* before an ALJ. (Tr. 25-26). An administrative hearing was held on March 25, 2010. (Tr. 113-137). At the hearing, ALJ McNeil heard testimony from Plaintiff, Janet Rogers, an impartial vocational expert and Mary Buban, M.D., medical consultant. Thereafter,

1

on June 2, 2010, ALJ McNeil denied Plaintiff's application in a written decision. (Tr. 14-23).

The record on which the ALJ's decision was based reflects that Plaintiff obtained his GED and had past relevant work as a maintenance supervisor, quality supervisor, and barrel factory supervisor. (Tr. 22). Plaintiff was born in 1958 and was 46 years old on his alleged onset date. Upon consideration of the record, the ALJ found that Plaintiff had the following severe impairments: "alcohol abuse, depression, anxiety, hypertension, and lumbosacral spondylosis." (Tr. 16). The ALJ concluded that none of Plaintiff impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform medium work, with the following exceptions:

> He is capable of lifting up to 50 pounds occasionally and 25 pounds frequently; pushing or pulling 25 pounds with hand or foot controls; sitting for up to 6 hours in an 8-hour workday; and standing or walking about 6 hours in an 8-hour workday. Due to mental limitations, the claimant is limited to work involving simple tasks with few changes in duties and without strict time standards or production quotas. The claimant can have no more than occasional contact with supervisors and coworkers and no contact with the general public.

(Tr. 18). Based upon testimony from the vocational expert, and given Plaintiff's age, education, work experience, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as inspector, hand packer, and surveillance monitor. (Tr. 23). Accordingly, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and was not entitled to SSI. (Tr. 23).

2

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference

3

> from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

On appeal to this Court, Plaintiff asserts the ALJ erred by: (1) violating Plaintiff's due process rights; (2) improperly evaluating Plaintiff's alcohol use; (3) failing to properly evaluate the opinion evidence; and (4) improperly assessing Plaintiff's credibility. Plaintiff's statement of errors also contains a request for a sentence six remand. Upon close inspection, the undersigned finds that the ALJ's decision fails to clearly explain the reasons for the conclusions reached and therefore the Court cannot engage in meaningful review of the ALJ's decision. As detailed below, this matter should therefore be remanded be for further proceedings.

*1. Relevant Medical Evidence*

Consulting psychologist Dr. Myers examined Plaintiff in June 2008. (Tr. 430). She diagnosed him with post-traumatic stress disorder (PTSD), chronic; and panic disorder with agoraphobia; and assigned him a Global Assessment of Functioning (GAF) score of 40.[1] (Tr. 435). She opined that Plaintiff had a marked impairment in his ability to relate to others and to withstand the stress of daily work; and moderate impairment in his ability to understand, remember and follow instructions, and to maintain attention, concentration, persistence and pace. (Tr. 435). Dr. Myers specified that Plaintiff related well to her, but that her opinion was based on his description of

---

[1] The GAF scale is used to report a clinician's judgment of an individual's overall level of functioning. Clinicians select a specific GAF score within the ten-point range by evaluating whether the individual is functioning at the higher or lower end of the range. A GAF score of 31- 40 indicates some impairment in reality testing, such as illogical or obscure speech, or major impairment in several areas, such as work, school, family relations, judgment, thinking or mood. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33-34 (American Psychiatric Association, 4th ed. text rev. 2000) (DSM-IV-TR).

5

instances of anxiety and panic; she likewise explained that Plaintiff was able to comprehend and complete simple routine tasks. (Tr. 435).

In August 2008, State agency psychologist Dr. Lewis opined that Plaintiff had moderate limitations in his activities of daily living; his social functioning; and his ability to maintain concentration, persistence or pace. (Tr. 456, 466). Dr. Lewis explicitly indicated that Dr. Myers's opinion of marked limitations and the GAF score of 40 were not supported by objective evidence; she noted that Dr. Myers did not find any thought disorder or psychosis, and that this was inconsistent with a GAF score of 40, which is normally indicative of an impairment in reality testing. (Tr. 454). Dr. Lewis cited to Plaintiff's presentations when seeking treatment for physical conditions; the records from Dr. Budke; Plaintiff's activities of daily living; and the observations of SSA employees, noting that they contradicted Dr. Myers's opinion. (Tr. 455). She opined that Plaintiff had moderate and not marked limitations, and concluded that Plaintiff could "do 1, 2, 3 step commands" in a static work environment with minimal public interaction. (Tr. 455). She noted that he would "do best" in an isolated setting with few coworkers, and should avoid positions that would bring him into contact with crowds. (Tr. 455). Dr. Lewis also noted that there was insufficient evidence to reach any conclusions for the period from the alleged onset date to date of application. (Tr. 468).

In September 2008, psychologist Dr. Wishnick opined that, out of twenty work-related mental functions, Plaintiff had no significant limitations in nine; moderate limitations in eight; and marked limitations in three. (Tr. 480). He opined that Plaintiff was unemployable and cited to Plaintiff's symptoms of depression and anxiety. (Tr. 481).

Thereafter, in November 2008, State agency psychologist Dr. Waddell affirmed Dr. Lewis's opinion in November. (Tr. 498). He noted inconsistencies in Plaintiff's presentation to medical personnel, as well as his progress with treatment. (Tr. 498).

In March 2010, Neresa Thomas, LPCC (Licensed Professional Clinical Counselor), opined that Plaintiff had marked restrictions in his activities of daily living and ability to maintain concentration, persistence or pace, as well as extreme restrictions in his social functioning. (Tr. 739). She also indicated that he had suffered one or two extended episodes of decompensation in the past year. (Tr. 739). Counselor Thomas further opined that Plaintiff had a number of work-preclusive limitations. (Tr. 738-39). She indicated that Plaintiff would miss more than four days of work a month, and that Plaintiff would decompensate with even a minimal increase in mental demands or change in environment. (Tr. 740).

Also in March 2010, psychologist Dr. Buban, reviewed the record and provided an expert report. With respect to the paragraph "B" criteria for evaluating mental impairments, Dr. Buban's report indicates that from the period from 2004 through June 9, 2008, Plaintiff had mild restriction of activities of daily living, mild difficulties maintaining social functioning, mild difficulties maintaining concentration persistence or pace and no episodes of decompensation. (Tr. 689). For the time period after June 9, 2008, Dr. Buban opined that Plaintiff had moderate activities of daily living, moderate difficulties maintaining social functioning, marked difficulties maintaining concentration persistence or pace and no episodes of decompensation. (Tr. 689). Dr. Buban indicated that he gave less weight to the finding of Dr. Meyers and Dr. Wishnick because "both did not adequately evaluate alcohol. (Tr. 689). Dr. Buban further

7

indicated that Plaintiff's persistent complaint is anxiety with occasional panic attacks. However, the record indicates improvement with medication. Plaintiff could perform simple tasks with few changes; occasional contact with coworkers and supervisors; no contact with the public; and no strict time standards or production quotas. (Tr. 692).

Dr. Buban also testified as a medical expert at the administrative hearing. Notably, he testified that he assessed Plaintiff's functional limitations in two time-frames based on Plaintiff's reported alcohol use/abuse. Specifically, Dr. Buban testified that the record indicated that Plaintiff was drinking heavily from 2004 through June 2008 and that alcohol was a contributing factor to his impairments during that period. (Tr. 41, 689). However, after June 2008, the record indicated that Plaintiff significantly cut back on his alcohol consumption. Dr. Buban testified that "alcohol is going to aggravate depression - anxiety and depression factors. Alcohol is a well-known depressant, the rebound effects after heavy drinking are a period of anxiety." (Tr. 42). Dr. Buban further testified that if Plaintiff became and remained sober, his assessment relating to Plaintiff's functional limitations due to his mental impairments would remain unchanged. *Id.*

### 2. *The ALJ Improperly Credited Dr. Buban's Opinion*

The ALJ determined that Dr. Buban's medical opinion was entitled to great weight, "as it was based on a superior longitudinal record and consistent with the credible reports of claimant's activities of daily living." (Tr. 21). The ALJ further found that the findings of Counselor Thomas and Drs. Myers and Wishnick were not consistent with the objective medical evidence, including Plaintiff's mental status as record in the majority of the treatment notes. (Tr. 21). With respect to Dr. Wishnick, the

8

ALJ noted that his assessment did not appear to address Plaintiff's alcohol abuse. (Tr. 21).

As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue*, 774 F. Supp.2d 875, 877 (N.D. Ohio 2011); *see also Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544–546 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes." *Bailey v. Commissioner of Social Security*, 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb, 2, 1999). *See also Hurst v. Secretary of Health and Human Services*, 753 F.2d 517 (6th Cir. 1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82-62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

When an ALJ fails to mention relevant evidence in his or her decision, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Morris v. Secretary of Health & Human Servs.*, Case No. 86-5875, 1988 WL 34109, at * 2 (6th Cir. Apr. 18, 1988) (*quoting Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)); *see also Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996) (The Court cannot uphold the decision of an ALJ, even when there may be sufficient evidence to support the decision, if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").

Here, as detailed above, Dr. Buban testified that alcohol consumption would increase Plaintiff's depression and anxiety. Despite this testimony, he also opined that Plaintiff had only mild mental impairments when he was drinking heavily and moderate and marked mental limitations when his drinking decreased. Dr. Buban further testified that if Plaintiff remained sober, it would not effect his mental functional limitations. The ALJ's decision, however, fails to reconcile these inconsistences or even identify Dr. Buban's ambiguous testimony. The ALJ's failure to explain his rationale for accepting Dr. Buban's ambiguous testimony, relating to the impact of Plaintiff's alcohol use on his mental impairments, prevents this Court from engaging in meaningful review of the ALJ's decision. Because the ALJ relied on Dr. Buban's findings in discrediting the opinions of Plaintiff's treating and examining sources and determining Plaintiff's RFC , the ALJ's decision cannot be found to be substantially supported. Accordingly, this matter should be remanded for further fact-finding.[2]

Additionally, because the undersigned cannot engage in a meaningful review of the ALJ's disability determination as outlined above, and because the ALJ must reconsider the opinion evidence of record, it is also necessary for the ALJ's credibility assessment to be reconsidered on remand. Notably, the ALJ's findings may change after the medical evidence is reevaluated on remand, making it appropriate to reconsider his credibility finding.

---

[2] Additionally, Dr. Buban's expert report indicated that he rejected the assessments of Dr. Meyer and Dr. Wishnick because they "[did] not adequately evaluate alcohol." (Tr. 689). The ALJ's decision also cited Dr. Wishnick's failure to address Plaintiff's alcohol use as reason for assigning little weight to his findings. As Dr. Buban's evaluation of Plaintiff's alcohol use is confusing at best, the undersigned is unable to determine if the ALJ properly evaluated the opinion evidence. Accordingly, on remand, the ALJ should be instructed to reevaluate the weight giving to Plaintiff's treating and examining sources. The ALJ should also revisit the impact of Plaintiff's alcohol use and provide a clear explanation for the conclusions he reaches in that regard.

3. *Sentence Six Remand Request*

Plaintiff's statement of errors also includes a request for a Sentence Six remand to allow the Commissioner to consider evidence relating to his April 2010 stroke. Notably, after the administrative hearing, the ALJ left the record open until April 8, 2010, to allow Plaintiff to submit evidence that had been requested, but was not available at the time of the hearing. On April 12, 2010, Plaintiff counsel asserts that he received a call from Plaintiff indicated that he had been hospitalized for stroke and had been released from the hospital on April 11, 2010. (Doc. 6 at 13). Thereafter, Plaintiff's counsel wrote a letter to the ALJ acknowledging that the record was closed and then asking the ALJ "if you want us to obtain the records" related to the stroke. (Tr. 282). Plaintiff asserts, however that the ALJ failed to respond to his request to submit the additional records and instead issued his unfavorable decision six weeks later "far too soon to allow Plaintiff to obtain and submit the evidence of his stroke." Thus, Plaintiff asserts it was an infringement on Plaintiff's right to due process for ALJ McNeil to refuse to allow Plaintiff adequate time to submit the records of this severe impairment. As such, Plaintiff argues that his claim should be remanded for a new hearing in accordance with sentence six of 42 U.S.C. § 405(g).

Pursuant to sentence six, a court can remand for consideration of new evidence only if the plaintiff establishes that the evidence is both new, in that it was "not in existence or available to the claimant at the time of the administrative proceeding" and "material," meaning there is "a reasonable probability that the Secretary would have reached a difference disposition." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citations omitted); *see also Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006). The plaintiff must also establish good cause for his failure to present the

evidence to the ALJ. *See Bass v. McMahon,* 499 F.3d 506 (6th Cir. 2007); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). "'Good cause' is not established solely because the new evidence was not generated until after the ALJ's decision. The Sixth Circuit has taken a 'harder line.'" *Saunders v. Comm'r of Soc. Sec.*, 2010 WL 1132286 at *3 (W.D. Mich. March 3, 2010)(*quoting Oliver v. Sec. of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) (additional citations omitted).

Here, Plaintiff has not shown that he is entitled to a sentence six remand. First, Plaintiff has not clearly shown that this evidence is new. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (additional evidence is new if it was not in existence or available to the claimant at the time of the administrative proceeding). Although Plaintiff's stroke occured after the hearing, he has not explained why he was not able to obtain whatever evidence he claims as the basis for a sentence six remand, nor has he outlined his efforts to obtain the records prior to the issuance of the decision. Second, with respect to the materiality of this evidence, Plaintiff has not shown a "reasonable probability" that the Secretary would have reached a different conclusion on the issue of disability if he was presented with the additional evidence. *See Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). The few records Plaintiff has attached show only vague sensory and neurologic limitations with his left arm with no statement of how this affects Plaintiff's functionality.

In any event, the Sixth Circuit has held that when an ALJ commits an error that results in a sentence four remand, the ALJ can consider additional evidence, even though the plaintiff has not otherwise met the requirements for a sentence six remand. *Faucher v. Sec. of Health and Human Servs.*, 17 F.3d 171, 175 (6th Cir. 1994). Accordingly, because remand is warranted to cure the errors as outlined above, the ALJ

should also be instructed to consider the additional evidence relating to Plaintiff's stroke on remand.

*4. Due Process*

Last, the undersigned finds Plaintiff's assertion that the ALJ deprived him of due process is not well-taken. Specifically, Plaintiff maintains that his due process rights were violated at the hearing because the ALJ limited his cross-examination of the ME; and by not accepting an offer for evidence about Plaintiff's educational background.

As a general rule, in order to show a due process violation, a claimant must establish a risk of erroneous deprivation of his interest in a "fair determination of [his] qualification" for benefits and a "meaningful opportunity to present his case" through the ALJ's actions, as well as the value of related procedural safeguards. *Adams v. Massanari,* 2003 WL 173011, *7 (6th Cir. Jan. 23, 2003).

*a. Dr. Buban*

At the hearing, Dr. Buban testified that her review of the medical records demonstrated that Plaintiff had been using alcohol heavily until about mid-1998, and so she considered alcoholism as a contributory diagnosis for the time when the records showed he was drinking. (Tr. 36-38, 41). However, Dr. Buban testified that the record showed Plaintiff's alcohol use had "significantly decreased" in June 2008. (Tr. 37-38). She opined that prior to June 9, 2008, Plaintiffs impairments included alcohol abuse, but after that time period she did not consider alcohol abuse to be a "severe" impairment. (Tr. 41). Dr. Buban further testified that she believed Plaintiff's work records showed he had good persistence and pace abilities, and that he had no documented difficulty with attendance or punctuality. (Tr. 40). She also noted that Plaintiff's symptoms were generally not as restrictive as he indicated. (Tr. 40). Based on her review of the record,

Dr. Buban opined that Plaintiff is capable of simple tasks with few changes, not more than occasional contact with supervisors and co-workers, no contact with the public, and no strict time standards or strict production quotas. (Tr. 38-39).

Upon cross examination, Plaintiff's counsel asked Dr. Buban whether she believed that the current mental health treatment records (which were not a part of the evidence of record at the time of the hearing) would assist her in making a more accurate evaluation of Plaintiff's mental impairments and the limitations caused by those impairments. (Tr. 43-44). The ALJ objected to this line of questioning as speculative. Plaintiff argues that the ALJ violated his right to due process by failing to allow such questions.

The relevant hearing testimony is reflected as follows:

*Examination of Medical Expert by Claimant's Attorney*

Q. . . .[D]o you think that those records would be helpful in better understanding the claimant's condition and his limitations after the June 2008 date?

ALJ: I won't ask [Dr. Buban] to speculate, she doesn't know what's in the records, I don't know what's in the records - -

ATTY: Well, I'm asking if she they'd be helpful to look at them.

ALJ: And I would call that speculating and the answer is I'm not going to allow her to speculate about what those records might or might not show.

ATTY: Let me rephrase the question.

ALJ: Okay.

ATTY: Is it better to have evidence of current treatment when assessing a person's functional limitations?

ALJ: Again, that's too broad a question. Current treatment could be for any sources, any reason, have nothing to do or everything to do with this case, I'm not going to allow her to speculate.

14

    ATTY: Okay. It a simple question about whether mental health treatment records are useful.

    ALJ: And I have given you a simple ruling counsel.

    ATTY: All right. Then I have no further questions, your honor, since you won't let me go with that line of questioning.

    ALJ: You can ask other questions - -

    ATTY: I have no further questions for this witness, your honor.

(Tr. 43-44).

Upon careful review the undersigned finds that such testimony does not establish that the ALJ deprived Plaintiff of any meaningful opportunity to present his case at the hearing. The ALJ objected to two questions by Plaintiff's counsel, and Plaintiff's counsel then declined to ask additional questions of the medical expert.

    *b. Evidence relating to Plaintiff's Education*

Plaintiff further asserts that his rights to due process where also infringed by ALJ McNeil's actions regarding additional evidence which Plaintiff proposed to enter into the record relating to his education. At the hearing, the ALJ asked Plaintiff if he finished four years of college. (Tr. 68). Plaintiff responded that he only attend college for about a year and then couldn't handle it and quit. (Tr. 68). The ALJ then noted that the record contained a form completed earlier, that indicated that Plaintiff completed four years of college. Counsel offered to obtain Plaintiff' actual school transcripts, in order to clear up any confusion about the issue, ALJ McNeil refused the offer. (Tr. 68-70).

Notably, Plaintiff's domestic partner, Mr. Neuhaus (Tr. 203, 216), reported that Plaintiff had completed college in 1985 and also had special vocational training. (Tr. 202-03). Thus, this information was reasonably before the ALJ at the time of the hearing. More importantly, the ALJ did not cite to this discrepancy in the decision and

15

did not indicate that he considered this information in assessing Plaintiff's credibility. Accordingly, Plaintiff has failed to show any deprivation of his due process rights.[3]

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Faucher*, 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g).

2. On remand, the ALJ be instructed to: 1) properly assess and evaluate the opinion evidence, and provide a clear explanation for the conclusions reached; 2) reevaluate Plaintiff's alcohol use in accordance with agency

---

[3] Based on Plaintiff's due process allegations, Plaintiff asserts that this matter should be remanded to a different ALJ. However, as outlined above, Plaintiff's due process allegations are not well-taken and he has failed to show any bias on the part of ALJ McNeil.

regulations and controlling law; 3) properly consider Plaintiff's credibility and complaints of pain; and 4) consider any additional evidence submitted by Plaintiff relating to his April 2010 stroke.

3. As no further matters remain pending for the Court's review, this case be **CLOSED.**

                                               *s/Stephanie K. Bowman*
                                               Stephanie K. Bowman
                                               United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| CLARENCE BUTTREY, | Case No. 1:11-cv-357 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).